**In the Matter of Teresa Frances MITAN, Debtor.**

**Bankruptcy No. 93–49786–G.**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

April 21, 1994.

---

**9.** Plaintiff's brief A, page 5.

James R. Sheehan, Bloomfield Hills, MI, for debtor.

Keith S. King, Bloomfield Hills, MI, for secured creditor.

### ORDER LIFTING THE AUTOMATIC STAY AND DISMISSING DEBTOR'S PETITION WITH PREJUDICE

RAY REYNOLDS GRAVES, Chief Judge.

### *Introduction*

The debtor has filed three bankruptcy cases since 1985 and two this year. The first proceeding was filed under chapter 7 in 1985, case number 85–04515–G and remains pending before this Court. The debtor's chapter 13 case was filed on June 14, 1993. On September 1, 1993, a hearing was heard before this Court based upon creditor Investaid's motion to dismiss the debtor's chapter 13 case. After the hearing, the debtor's chapter 13 case was dismissed. Shortly thereafter, on the same date, debtor Teresa Mitan motioned this Court to convert her previously dismissed chapter 13 case to chapter 11. Prior to the entry of the order dismissing the chapter 13 case, the debtor filed a chapter 11 case leaving the motion to convert standing. On October 5, 1993, an order dismissing the chapter 13 case was entered. This Court denied the motion to convert on October 13, 1993.

The Debtor filed for Chapter 11 on September 9, 1993. Investaid argues that the petition was filed in bad faith and that the petition should be dismissed for cause pursuant to 11 U.S.C. § 1112(b)(1)(2) and (3) which states:

(b) Except as provided in subsection (c) of this section, on request of a party in interest or in the United States trustee, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including:

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors.

Alternatively, Investaid argues that the stay should be lifted for cause pursuant to 11 U.S.C. § 362(d)(1) due to:

(i)   The reasons set forth above;

(ii)  Lack of adequate protection, and;

(iii) The Debtor has no equity and the property is not needed for an effective reorganization pursuant to 11 U.S.C. § 322(d)(2)(B).

A bench hearing was held before this Court on December 14, 1993 and the motion to lift stay was granted. This court hereby incorporates by reference the bench ruling of December 14, 1993 and hereby finds that the Debtor's chapter 11 petition should be dismissed for bad faith.

### Facts

On June 25, 1990, Investaid made a mortgage loan to Debtor in the principal sum of $103,500 with monthly installment payments and a balloon payment of all sums due under the note to be paid on July 1, 1995. The Debtor defaulted under the loan by failing to pay real property taxes and thereafter ceased making principal and interest payments in February, 1993. On March 29, 1993 the Debtor filed a lawsuit against Investaid in the Oakland County Circuit Court[1] to enjoin a mortgage foreclosure by Investaid. The case was dismissed by summary disposition. Thereafter, the Debtor filed for bankruptcy protection.

### Discussion

#### I.

Creditor Investaid argues that this case should be dismissed for the following reasons:

#### A.   *Debtor Lacks Sufficient Income*

During the meeting of creditors, the Debtor was elusive as to her stated income where she claims to receive $1,700.00 per month from the "operation of a trade or business." At the meeting of creditors, she stated that she would receive the funds from future wages.

The Debtor's schedule indicates that her income currently consists of:

| | |
|---|---|
| Alimony | $ 500.00 |
| Social Security | 452.00 |
| Reimbursement | 100.00 |
| | $1,052.00[2] |

Moreover, the Debtor owes arrearages amounting to $33,000.00 including real property taxes.

#### B.   *Bad Faith Filing*

Creditor argues that Debtor's filing was in bad faith as evidenced by her filing a chapter 7, 11 and 13 petition during the same period of time.

#### C.   *Continuing Loss to or Diminution of the Estate*

The Debtor has a negative cash flow.

#### II.

While there is no requirement that a petition commencing a chapter 11 case be filed in good faith, it has become a universally accepted principle that the Bankruptcy Court has the inherent power to dismiss a case in which it finds that good faith is lacking. *Carolin Corp. v. Miller*, 886 F.2d 693, 698 (4th Cir.1989); *In the Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986); *In re Winshall Settlors Trust*, 758 F.2d 1136, 1137 (6th Cir.1985). The Sixth Circuit in *Winshall* noted three factors that are relevant in examining a chapter 11 petition to determine if it has been filed in good faith:

(1) whether the debtor has any assets;

(2) whether the debtor has an ongoing business to reorganize, and

(3) whether there is a reasonable possibility of reorganization.

In addition to the factors set forth in *Winshall*, at 1137, a court may consider any other factors which evidence an intent to abuse the judicial process. *In re Laguna Associates, Limited Partnership*, 147 B.R. 709, 716

---

**1.**  Case No. 93–4521009–CK.

**2.**  The Debtor lists her expenses as $1,255.00 excluding her mortgage.

(E.D.Mich.1992). In particular, the court in *Laguna* considered evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. *Id.*, at 716.

■ The Bankruptcy Court provides a safe harbor for a debtor only so long as it continues to be evident that the effective rehabilitation of the enterprise is reasonably possible. *In re Dutch Flat Investment Co.*, 6 B.R. 470, 471 (N.D.Cal.1980). A debtor with no assets, no creditors, and no ongoing business cannot effectively rehabilitate its enterprise. *In re Eden Associates*, 13 B.R. 578, 584 (S.D.N.Y.1981).

■ In determining whether a case should be dismissed the court is obligated to look to case law in establishing a judicial rational for dismissal. One such reason is lack of "[a] good faith filing on the part of Debtor." See Collier on Bankruptcy § 1112.03 at pages 112–31 and 112–23 citing *In re Victory Construction Co., Inc.*, 9 B.R. 549, 3 C.B.C.2d 655 (Bankr.C.D.Cal.1981) "conduct interdicted in the cases can be summarized as conduct which is inconsistent with the underlying purposes and contemplation of the reorganization and rehabilitation process and constitutes a perversion of legislative interest." The *Victory* court continues and states "In a single asset real estate case, in considering a motion to dismiss under 11 U.S.C. § 1112 for lack of good faith, a court is being asked to consider whether there is an arguable relationship between the filing of the chapter 11 petition and the reorganization-related purposes of chapter 11. Cause for dismissal or conversion of a chapter 11 case includes the absence of good faith." Defining good faith versus bad faith in certain chapter 11 cases is difficult. Although there is no specific test in determining, if a petition has been filed in bad faith, see *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988); *In re Little Creek Development*, 779 F.2d 1068 (5th Cir.1986) courts have looked at the totality of the circumstances in determining bad faith. *In re Zick*, 931 F.2d 1124, 1128 (6th Cir.1991).

The Eleventh Circuit in *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1983) set forth certain factors in determining if a petition for reorganization has been filed in bad faith:

1) lack of a realistic possibility of an effective organization;

2) evidence that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights;

3) whether the debtor is seeking to use the bankruptcy provision to create and organize a new business, not to reorganize or rehabilitate an existing enterprise or to preserve going concern values of a viable or existing business;

4) the timing of the debtor's relevant actions

5) whether the debtor appears to be merely a "shell" corporation; and

6) whether the debtor was created or the subject property transferred to the debtor for the sole purpose of obtaining protection under the automatic stay of chapter 11 by filing bankruptcy. *Id.*, at 297, 298.

■ With respect to the factors established in *In re Natural Land Corp.*, it is clear to this court that based upon the debtor's finances and the fact that her income is currently non-existent and future income is unlikely and tentative at best, this debtor lacks the real possibility of an effective reorganization. Likewise, it is also clear that this debtor has engaged in a course of action that merely seeks to delay or frustrate her creditors, given her history of filing all chapters of bankruptcy, in an effort to seek protection of the automatic stay.

Factors necessary in determining whether this case should be dismissed for bad faith were more specifically delineated in the seminal case of *In re Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.1986) where elements for dismissal premised upon bad faith more specific to the case at bar were outlined:

(a) the debtor has one asset such as a tract of undeveloped or developed real property, encumbered by liens of the secured creditor;

(b) there are generally no employees except for the principals;

(c) there is little or no cash flow and no available source of income to sustain a plan of reorganization to make adequate protection payments;

(d) there are typically only a few, if any unsecured creditors where claims are relatively small;

(e) the property has been posted for foreclosure because of arrearages in the debt and the debtor has been unsuccessful in defending foreclosure in state court or, alternatively, the debtor and creditor have proceeded to a standstill in state court litigation and the debtor has been required to post bond which it cannot afford;

(f) bankruptcy offers the only possibility of forestalling loss of a debtor's property;

(g) there are sometimes allegations of wrongdoing by the debtor or its principal; and

(h) the new debtor syndrome exists in which a one asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors. 779 F.2d at 1073.

The debtor's actions in the case at bar meets every aspect of the designated elements raised in *Little Creek*.

(a) The assets only consist of the Debtor's home.

(b) There are no employees although under *Toibb* this factor is no longer necessary.

(c) There is currently no cash flow.

(d) There are merely a few creditors with small claims.

(e) The property is the subject of a pending foreclosure sale.

(f) There are allegations of wrongdoing in that the debtor has filed several bankruptcy petitions.

(g) The new debtor syndrome is inapplicable.

Although the circuits are split as to whether a case should be dismissed for maintaining simultaneous petitions, a bankruptcy court may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, facts which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." *In re Laguna Associates, Ltd. Partnership, supra.* See also *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir.1984). In the case at bar, the Debtor's continuous efforts to gain relief from the automatic stay and prolonging the creditor's right to hold a foreclosure sale by availing herself of the bankruptcy proceeding and continuously filing bankruptcy petitions, no matter the chapter or whether a current proceeding exists reflects a pattern of bad faith. The Debtor's serial and simultaneous filings are indicative of her intentions to circumvent the inevitable foreclosure sale as she continues to forestall the creditors' efforts to collect their debts. Such action on behalf of the Debtor demonstrates an indicia of bad faith and her inordinate determination to frustrate and delay the creditors' actions. Such behavior bulldozes the outer envelope of acceptable good behavior as required under the code and can only be deemed as bad faith.

### *Conclusion*

The Debtor's continuous unthwarted efforts to maintain separate and simultaneous bankruptcy proceedings coupled with manifestations of maintaining badges of bad faith behavior causes this court to reach the inescapable conclusion that the debtor's case should be dismissed for bad faith with prejudice.